IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LOGAN COAL & TIMBER CORPORATION,

        Plaintiff,

v.                                      CIVIL ACTION NO.   2:22-cv-00602

KINZER BUSINESS REALTY, LTD.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Logan Coal & Timber Corporation's ("Plaintiff") motion for a set-off.  (ECF No. 25.)  Also pending are Defendant Kinzer Business Realty, Ltd.'s ("Defendant") objections to the judicial sale.  (ECF No. 26.)  For the reasons more fully explained below, Plaintiff's motion is **DENIED**, and Defendant's objections are **OVERRULED**.

*I.    BACKGROUND*

This is a partition action between two natural resource development companies.  Plaintiff is a West Virginia corporation with its principal place of business in West Virginia.  (ECF No. 1 at 2, ¶ 8.)  Defendant is a Kentucky limited partnership.[1]  (*Id.* at 3, ¶ 9.)  Together they own, as

---

[1] Defendant has one general partner, Kinzer Business, LLC, and two limited partners, the JW Kinzer Irrevocable Trust and the Lucy M. Kinzer Irrevocable Trust (collectively "the Trusts").  (ECF No. 1 at 3, ¶ 9.)  The two limited partners, that is, the two Trusts, also happen to be the sole members of the general partner here.  (*Id.*)  The JW Kinzer Irrevocable Trust has one trustee, Terry Kinzer, who is a Kentucky citizen.  (*Id.*)  The Lucy M. Kinzer Irrevocable Trust likewise has one trustee, Jerry Kinzer, who is also a Kentucky citizen.  (*Id.*)  Because both trustees are Kentucky citizens, both Trusts, for diversity purposes, are Kentucky citizens.  *Wurts v. Branch Banking & Tr. Co.*, 402 F. Supp. 3d 335, 338 (S.D. W. Va. 2019) (trusts share the citizenship of their trustee).  Thus, because both Trusts are Kentucky citizens, Kinzer Business, LCC, is likewise a Kentucky citizen.  *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011)   (limited   liability

1

tenants in common, roughly 8,895 acres of real estate in Mingo County, West Virginia. (ECF No. 1-1 at 5, ¶ 5.) Plaintiff owns an undivided 93% interest in the property. (*Id.* at 7, ¶ 8.) Defendant owns the remaining 7% interest. (*Id.* at 7, ¶ 9.) This shared property consists of 41 different tracts, ranging in size from over 1,300 acres to as little as half an acre. (*Id.* at 5–6, ¶ 6.) Many tracts are fee simple, less the coal estate.[2] (*See id.*) Some are surface only. (*See id.*) Others are the mineral estate only, also save the coal estate. (*See id.*) A few tracts are currently leased for oil and gas development. (*See id.* at 6–7, ¶ 7.) Defendant is the lessee to those leases, having acquired its leasehold interests before purchasing a share of the property. (*Id.*)

Plaintiff filed this partition action in the Circuit Court of Mingo County, West Virginia on November 21, 2022. (ECF No. 1-1.) Plaintiff's complaint alleged that the two parties own the subject property and went on to describe the property. (*Id.* at 5–7, ¶ ¶ 5–9.) The complaint further alleged that Plaintiff has carried the burden of managing and maintaining the property, while Defendant has been uninvolved. (*Id.* at 7, ¶ ¶ 11–12.) Seeking to end this lopsided relationship, the complaint requested that the Court partition the land. (*Id.* at 8–9, ¶ ¶ 14–18.) More precisely, the complaint alleged that the land could not be physically partitioned, and it requested that the Court appoint a Special Commissioner to hold a public auction and partition the land via sale.[3] (*Id.*)

---

companies share the citizenship of their members). Finally, because all of Defendant's partners are Kentucky citizens, so, too, is Defendant. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 192 (1990) (limited partnerships share the citizenships of their general and limited partners).

[2] Plaintiff and C.W. Campbell Company (not a party to this suit) own the coal estate. (ECF No. 1-1 at 7, ¶ ¶ 9–10.) The coal estate is not a part of this partition action, and it remains vested in these two entities.

[3] The Court uses the phrases "judicial sale," "partition by sale," and "public auction" interchangeably throughout this Memorandum Opinion and Order.

Defendant removed the action to this Court on December 28, 2022.[4] (ECF No. 1.) Following removal, Plaintiff moved the Court to appoint a Special Commissioner and set procedures for a judicial sale. (ECF No. 11.) Rather than opposing the motion, Defendant agreed that a sale should take place and spent the next four weeks hammering out the details with Plaintiff. (*See* ECF Nos. 13–16.) The parties ultimately agreed on many terms but could not agree whether a set-off would be appropriate if either party won the auction. (ECF Nos. 16, 17.) Seeing that both parties wanted a judicial sale, the Court granted Plaintiff's motion and appointed Scott A. Windom, Esq., as Special Commissioner. (ECF No. 18.) The Court then adopted the parties' agreed upon sale procedures. (*Id.*) As for the potential set-off, because Plaintiff was the party seeking it, the Court directed Plaintiff to brief the issue before the sale. (ECF No. 33 at 6:5–7:9.) Plaintiff never did.

So on December 5, 2023, the Court conducted the judicial sale at the Robert C. Byrd United States Courthouse in Charleston, West Virginia. (ECF No. 23 at 1.) Mr. Windom oversaw the auction, and five different parties—including Plaintiff and Defendant—attended and participated. (ECF No. 38.) When all was said and done, Plaintiff won the whole lot, that is, the entire 8,895 acres, with a bid of $8,000,000.00. (ECF No. 23 at 1.) Plaintiff promptly deposited $800,000.00 (the parties agreed to a 10% deposit amount) with Mr. Windom, who filed his preliminary report that same day. (*Id.*)

That brings the Court to the current issues before it. On December 20, 2023, Plaintiff finally filed its motion for a set-off—15 days after the sale. (ECF No. 25.) A week later, Defendant objected to the sale. (ECF No. 26.) In its written objections, Defendant urges the

---

[4] The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Court to set aside the sale, give it a chance to show that its now-sold land can be partitioned in-kind, and allow it to keep the property that it lost at auction.[5] (*Id.*) These issues have since been fully briefed and are ripe for adjudication. (ECF Nos. 25–27, 37.)

## II. DISCUSSION

As just noted, the Court has two issues to resolve here. First, the Court must decide whether to grant Plaintiff a set-off. Second, the Court must decide whether it should set aside the sale, rewind the clock, and see if Defendant's now-sold property can be partitioned in-kind. The Court considers each issue in turn.[6]

### A. *Plaintiff waived its right to seek a set-off*

Waiver is the "intentional relinquishment of a known right." *Parsons v. Halliburton Energy Servs., Inc.*, 785 S.E.2d 844, 850 (W. Va. 2016) (quoting *Hoffman v. Wheeling Sav. & Loan Ass'n*, 57 S.E.2d 725, 735 (W. Va. 1950)). A party waives or relinquishes a right when it (1) has the right, (2) knows that it has the right, and (3) declines to exercise the right. *See* Syl. Pt. 4, *Bruce McDonald Holding Co. v. Addington, Inc.*, 825 S.E.2d 779 (W. Va. 2019). "Waiver may be established by express conduct or impliedly, through inconsistent actions." *Ara v. Erie Ins. Co.*, 387 S.E.2d 320, 323 (W. Va. 1989). Once waived, the right is gone forever. *Parsons*, 785 S.E.2d at 850.

Here, Plaintiff waived its right to seek a set-off by not briefing the issue when given the chance to do so. Specifically, Plaintiff raised the set-off off issue several weeks before the sale,

---

[5] Defendant also asks the Court to set a briefing schedule to allow the parties to litigate whether Defendant has accrued any earned acreage through its leasehold interests. (ECF No. 26 at 5–6, 12–13.) However, the earned acreage issue has never been raised in the pleadings, so the Court declines to entertain it.
[6] Because the Court is sitting in diversity, it applies West Virginia law. *Megaro v. McCollum*, 66 F.4th 151, 159 n.4 (4th Cir. 2023) ("A federal court sitting in diversity applies the substantive law of the state in which it sits.").

and the Court directed Plaintiff to brief the issue then, so that it could be resolved before any bids were placed and any money was due. However, despite having the opportunity to brief the issue and be heard, Plaintiff sat idle and passed on its chance to show that a set-off was appropriate. The Court thus finds that Plaintiff's inaction amounts to a waiver of the right and Plaintiff cannot now seek a set-off. *See Addington, Inc.*, 825 S.E.2d at 788–89 ("[T]he law ministers to the vigilant, not to those who sleep on their rights." (internal quotation marks omitted) (quoting *State v. Blickenstaff*, 804 S.E.2d 877, 880 (W. Va. 2017))).

### B. *Defendant is judicially estopped from seeking a partition in-kind*

1.

Judicial estoppel is a common law rule that prevents a party from "assum[ing] a certain position in a legal proceeding," prevailing with that position, and then "assum[ing] a contrary position" "simply because his interests have changed." *Hubbard v. State Farm Indem. Co.*, 584 S.E.2d 176, 186 n.21 (W. Va. 2003) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). Put differently, judicial estoppel bars "part[ies] from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in [a later] phase." *New Hampshire*, 532 U.S. at 749; *see also W. Va. Dep't of Transp. v. Robertson*, 618 S.E.2d 506, 513 (W. Va. 2005).

Unlike other forms of estoppel, which primarily protect innocent parties from having the rug pulled out from under them by their adversaries, judicial estoppel protects courts themselves from litigants' gamesmanship.[7] *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 825

---

[7] To be sure, judicial estoppel is not an attack on or limitation of a party's ability to make alternative arguments or pursue different theories of the same case. *Robertson*, 618 S.E.2d at 513 n.18. It is simply a recognition that "[t]here are limits beyond which a party may not shift his position in the course of litigation." *Id.* at 513 (alteration in original) (quoting *Watkins v. Norfolk & W. Ry.*, 23 S.E.2d 621, 623 (W. Va. 1942)).

S.E.2d 95, 111–12 (W. Va. 2019). Indeed, allowing parties to play "fast and loose" with the court system—and thereby manipulate the system to their advantage—would both undermine the truth-seeking function of the judicial branch and erode the public's trust in it. *Bison Ints., LLC v. Antero Res. Corp.*, 854 S.E.2d 211, 225 (W. Va. 2020); *Robertson*, 618 S.E.2d at 516; *see also New Hampshire*, 532 U.S. at 749–50 (recognizing that the "purpose [of judicial estoppel] is 'to protect the integrity of the judicial process'" (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982))). Since the doctrine "is intended to prevent [the] 'improper use of judicial machinery,'" *New Hampshire*, 532 U.S. at 750 (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980)), courts are free to raise the issue *sua sponte*, *Wilson*, 825 S.E.2d at 107 n.18; *Robertson*, 618 S.E.2d at 512, and may consider the equities of the entire case, *Wilson*, 825 S.E.2d at 109 (quoting *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 792 (7th Cir. 2013)).

However, courts cannot apply the doctrine unless four elements are met. *Robertson*, 618 S.E.2d at 515. First, the party against whom estoppel is contemplated must have "assumed a position on [an] issue that is clearly inconsistent with . . . a position taken earlier in the same case." *Id.* Second, the two contrary "positions [must have been] taken in proceedings involving the same adverse party." *Id.* Third, "the party taking the inconsistent positions [must have] benefit[ed] from his[] original position." *Id.* Fourth, and finally, "the original position [must have] misled the adverse party so that allowing the estopped party to change his[] position would injuriously affect the adverse party and the integrity of the judicial process." *Id.*

Defendant's conduct checks all four boxes. Starting with the first *Robertson* element, Defendant's current position—that the land can be partitioned in-kind—is flatly inconsistent with

6

it its prior position that the land should be partitioned by sale. Under West Virginia's partition statute, partition by sale is available only when partition in-kind is not feasible. W. Va. Code § 37-4-3. Partition by sale, in other words, is a last resort. *See id.* Thus, Defendant's decision to agree to and actively participate in a judicial sale—which put its land up for public auction—carried with it a representation that the land could not be partitioned in-kind. The Court thus finds that Defendant's new, post-sale position that a partition in-kind is feasible directly contradicts Defendant's previous position that a partition by sale was appropriate.

The second *Robertson* element warrants little discussion. Defendant has taken these two inconsistent positions in the same case, involving the same adverse party. That satisfies the second *Robertson* element. *Larry V. Faircloth Realty, Inc. v. Pub. Serv. Comm'n of W. Va.*, 740 S.E.2d 77, 83 (W. Va. 2013) (per curiam).

Turning now to the third *Robertson* element, the Court finds that it, too, is met. Had Defendant not vouched for a judicial sale, but instead sought a partition in-kind, the best-case scenario for Defendant would have been taking its 7% share of the land (roughly 620 acres) and walking away. However, by representing that the land should be sold on the courthouse steps, Defendant got the chance to outbid all others and get the entire property for itself—nearly 8,900 acres. And while it may be true that Defendant could have exercised its statutory right to buy out Plaintiff's share without resorting to a public auction, *see* W. Va. Code § 37-4-3, the auction gave Defendant the opportunity to snatch up the land at a price below anything Plaintiff might have accepted in a private transaction between the two. That opportunity—the chance to buy 8,895 acres of real estate below market value—is undisputedly a benefit, which Defendant would not have had but for it representing that a partition by sale was appropriate.

That leaves the fourth *Robertson* element. No doubt, allowing Defendant to restart this case from square-one would injure both Plaintiff and the court system. Start with Plaintiff's interests. Plaintiff won the judicial sale, has since deposited $800,000.00 with the Special Commissioner, and is now ready to complete the transaction and take title to the entire property. Forcing Plaintiff to go back and litigate issues that Defendant previously agreed did not exist—namely, whether the property could be partitioned in-kind—would be both unfair and futile. The Court sees no reason to make Plaintiff expend more time and money to simply confirm what Defendant has already agreed to be the case. *Bison Ints., LLC*, 854 S.E.2d at 224 (recognizing the unfairness of making litigants "expend additional time, resources, and money engaging in serial litigation on identical issues").

The court system would also be adversely effected. If Defendant were correct—and sour grape litigants could game the system, force courts to set aside agreed-upon sales, and then claw back property they voluntarily put up for sale and lost—partition auctions would become a farce. Indeed, how many disinterested third-parties would go through the hassle of securing financing for, traveling to, and bidding in a public auction that would invariably be set aside so that the previous owners could plunge back into litigation? How many rational actors would be willing to commit handsome sums towards property destined to be tied up in litigation for years to come—property that they may never own? Few, if any. As a result, courts would be conducting judicial sales with far fewer participants, curtailed competition, and lower winning bids. This, in turn, would violate the public policy of West Virginia, *Alex Lyon & Son, Sales Managers & Auctioneers, Inc. v. Leach*, 844 S.E.2d 120, 132 (W. Va. 2020) (holding that West Virginia's "[p]ublic policy requires bidding at auctions to be open, free, and competitive, so that both bidders and the property

8

owner receive the highest but fairest price through competitive bidding"), and "insult[] the integrity of the" court system, *Robertson*, 618 S.E.2d at 516 (quoting *State v. Fouse*, 355 N.W.2d 366, 370 (Wis. 1984)).

The Court thus concludes that Defendant has satisfied all four *Robertson* elements and is therefore judicially estopped from seeking a partition in-kind.

2.

Defendant disagrees. On Defendant's telling, it cannot be estopped from seeking a partition in-kind because, throughout this litigation, it has continually preserved the right to do so. (ECF No. 37 at 4–11.) Defendant makes two arguments in support, but neither withstand scrutiny.[8]

Defendant first points to an affirmative defense it raised in its answer. In that affirmative defense, Defendant said that a partition by sale would be inappropriate here "because the property interests at issue can be partitioned in kind." (ECF No. 3 at 2.) Because Defendant previously suggested that a partition in-kind was feasible, the argument runs, Defendant cannot now be barred from seeking one. There's just one rub: Defendant waived this affirmative defense through its subsequent conduct. Indeed, after Defendant filed its answer, Plaintiff moved the Court to conduct a judicial sale. Defendant never once objected to that sale occurring, nor did it seek a partition in-kind. Defendant instead agreed to the sale, dickered over its specifics, and then tried to win the entire property for itself. Because a partition by sale is appropriate only when partition

---

[8] Defendant also makes a passing argument that the sale should be set aside because it undervalues the property. (ECF No. 26 at 6.) However, Defendant did not develop this argument in its opening briefing, so the Court declines to consider it. *Short v. Hartman*, 87 F.4th 593, 615 (4th Cir. 2023) ("A party waives an argument by failing to . . . develop its argument—even if its brief takes a passing shot at the issue." (quoting *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017))).

9

in-kind is not feasible, W. Va. Code § 37-4-3, these actions are wholly inconsistent with Defendant's affirmative defense that a partition in-kind is appropriate. Defendant thus waived that affirmative defense and cannot now rely on it to set aside the sale. *Luborsky v. Carroll*, No. 15-0787, 2017 WL 1293991, at *5–7 (W. Va. Apr. 5, 2017) (memorandum decision) (finding that an affirmative defense may be waived by engaging in litigation conduct inconsistent with that affirmative defense).

Defendant falls back on language from the parties' planning report, which the Court later incorporated into its Scheduling Order. Specifically, Defendant points to the parties' agreement to postpone discovery and expert witness disclosures until after the judicial sale took place. (ECF No. 37 at 5.) This language, Defendant says, shows the parties' intent to litigate issues after the sale, including the partition in-kind issue. (*Id.*) However, Defendant's post hoc interpretation stretches this language too far. While true that the parties contemplated further litigation after the sale, that litigation was not unbounded. Instead, the parties understood that if Defendant lost its 7% interest at the sale, and Plaintiff won the sale, they would still have to hash out whether Defendant had accrued any earned acreage through its leasehold interests. (ECF No. 26-1 at 1–2 (description of existing oil and gas lease, which the Special Commissioner read aloud prior to the judicial sale, wherein Defendant put all prospective buyers on notice that it "claim[ed] a right to earned acreage" in the subject property that would have to be "confirm[ed] at a later date"); *see also* ECF No. 41.) Because this earned acreage issue was contingent on Defendant coming up empty handed at the sale, the parties properly relegated the issue to the backburner and put off any related discovery until necessary. The planning report language simply gave effect to that

understanding. It did not, as Defendant now wishes, give Defendant a right to put the genie back in the bottle.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion is **DENIED**, (ECF No. 25), and Defendant's objections are **OVERRULED**, (ECF No. 26).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: August 21, 2024

_____
THOMAS E. JOHNSTON, CHIEF JUDGE